BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
PAULA R. BROWN (254142)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
pbrown@bholaw.com

EVANGELISTA WORLEY LLC
JAMES M. EVANGELISTA (*pro hac vice forthcoming*)
10 Glenlake Parkway
South Tower Suite 130
Atlanta, GA 30328
Tel: 404/205/8400
404/205-8395 (fax)
jim@ewlawllc.com

Attorneys for Plaintiff and the Putative Classes

[Additional Counsel Appear on Signature Page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAREY RUNZEL OBERLY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO & COMPANY; WELLS FARGO BANK. N.A.,<br><br>Defendants. | Case No. 3:24-cv-01883<br><br>**CLASS ACTION COMPLAINT FOR:**<br>1. Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*;<br>2. Violations of California Unfair Competition Law, Cal. Bus. and Prof. Code. § 17200, *et seq.*;<br>3. Unjust Enrichment;<br>4. Conversion; and<br>5. Invasion of Privacy by Intrusion Upon Seclusion<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Carey Runzel Oberly ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendants Wells Fargo & Company and Wells Fargo Bank, N.A. (collectively "Wells Fargo" or "Company"), and makes the following allegations based on personal knowledge as to facts pertaining to her own experiences and on information and belief as to all others.

**NATURE OF THE ACTION**

1. Since at least 2008, Wells Fargo has unilaterally enrolled its customers in various financial and insurance products and services that its customers did not want, did not consent to, could not have qualified for the purported benefits, and typically knew nothing about. Nonetheless, and unknown to Plaintiff and the other class members, Wells Fargo had charged them for these products, presumably in conjunction with mortgages, credit cards and/or bank accounts they had with Wells Fargo at the time.

2. The revelation of these actions provides yet another example of the Company's myriad abusive, fraudulent, and unlawful business practices that have come to light in recent years that were designed to, and did, enrich Wells Fargo at the expense of its customers by generating additional fees, revenue and income from Plaintiff and similarly situated class members.

3. Indeed, Wells Fargo has been subject to class action litigation and regulatory actions based on its fake accounts scandal. In September 2016, Wells Fargo was forced to acknowledge that it had created 1.5 million fake deposit accounts and more than 500,000 fake credit card accounts in customers' names without their knowledge or approval.[1] In addition, in 2022, Wells Fargo paid more than $2 billion to consumers and $1.7 billion in civil penalties after the Consumer Financial Protection Bureau ("CFPB") found Wells Fargo was mismanaging loan accounts by charging illegal fees and interest.[2]

---

[1]   https://en.wikipedia.org/wiki/Wells_Fargo_cross-selling_scandal (last visited March 10, 2024).

[2]   https://www.consumerfinance.gov/about-us/newsroom/cfpb-orders-wells-fargo-to-pay-37-billion-for-widespread-mismanagement-of-auto-loans-mortgages-and-deposit-accounts/ (last visited March 10, 2024).

4. In late 2023 and early 2024, Wells Fargo sent letters to Plaintiff and class members advising of these practices and offering some compensation, albeit inadequate to remedy Plaintiff's and class members' actual damages. The letters looked like phishing scams or "junk mail," so many consumers did not respond. For those that responded, Wells Fargo offered pennies on the dollar, rather than fully compensate Plaintiff and class members for products and services they never wanted, Wells Fargo was extracting fees, interest, payments, and other considerations for these enrollments at Plaintiff's and class members' expense. Plaintiff and class members suffered actual damages, and were forced to pay fees, penalties, interest, and costs as a result of Wells Fargo's unlawful actions of which Plaintiff and class members were often unaware. This deceptive campaign was designed to give the appearance of correcting its wrongful conduct, including cheating its customers, while nonetheless keeping the profits of its scheme.

5. Wells Fargo is now seeking to limit its liability for its unlawful and fraudulent conduct at its customers' expense by attempting to pay its liabilities at bargain rates, hoping its customers will accept the inadequate offer and not ask too many questions about how much customers are really owed -- doing so without disclosure of each customer's actual damage.

6. Plaintiff, through this litigation, seeks to obtain a true and accurate accounting of Wells Fargo's unlawful activities and the money it extracted from customers or otherwise obtained at their expense to make them whole. Plaintiff brings this action against Wells Fargo for its violation of the Fair Credit Reporting Act, violation of California unfair and deceptive trade practices laws, common law conversion, and unjust enrichment.

**PARTIES**

7. Plaintiff Carey Runzel Oberly is a citizen of California. In late December 2023 and early February 2024, Plaintiff received multiple letters from Wells Fargo indicating that she had been "enrolled" in certain financial products she never approved of, never wanted, and never even knew about. According to the letters, Wells Fargo had enrolled Plaintiff in the following:

- An "Identity Theft Protection – Affinion" product that purportedly "began November 27, 2010 and ended December 17, 2010";
- An "Identity Theft Protection – Affinion" product without identifying the purported beginning and end dates; and

2  
CLASS ACTION COMPLAINT  
Case No.

00212064

- A "Health Protector Bonus" product that purportedly "began May 12, 2011 and ended May 23, 2011.

8. Plaintiff never agreed to, nor wanted, any of these products that Wells Fargo surreptitiously opened in her name and charged her for.

9. Each of the letters Plaintiff received also stated:

**What you need to know**
If you feel that the enrollment in this product was not authorized or not wanted by you, please call us within 60 days of the date of this letter so that we may care for any impact this enrollment may have caused. Otherwise, no action is needed.

**We're here to help**
If you have any questions regarding enrollment in this product, please call us at 1-877-642-7826, Monday through Friday 8:00 a.m. to 8:00 p.m. Central Time. We accept telecommunications relay service calls.

Thank you.

Wells Fargo Customer Care

10. Plaintiff called Wells Fargo's purported Customer Care department, apparently on a recorded line, after receiving each of these letters. In fact, the calls were directed to a third-party call center. The purported Wells Fargo Customer Care representative asked if Plaintiff remembered having enrolled in the product each time she called and each time Plaintiff stated she had not. The representative then told her how much money she would be receiving from Wells Fargo. On subsequent calls, after Plaintiff had learned from on-line research that if she disputed the amount initially told to her, Wells Fargo would pay $250 plus the initially offered amount. The representative also offered Plaintiff to engage in mediation if she chose.  In connection with each product, Plaintiff later received letters from Wells Fargo offering mediation. In each case, Plaintiff was required to send forms back to Wells Fargo requesting mediation, a process Plaintiff found to be difficult and confusing. While Plaintiff initially did request mediation, she disavows those requests here. Plaintiff believes the amounts of money she received from Wells Fargo for each of the products is inadequate to redress Plaintiff's damages.

11. Defendant Wells Fargo & Company is incorporated in Delaware with its principal place of business and corporate headquarters in San Francisco, California. Wells Fargo & Company is a financial services company with $1.875 trillion in assets, and provides banking, insurance,

investments, mortgage, and consumer and commercial finance through more than 5,200 branches, 13,000 ATMs, and the Internet. It has approximately 238,700 employees as of 2022.

12. Defendant Wells Fargo Bank, N.A. is a national banking association chartered under the laws of the United States with its primary place of business in Sioux Falls, South Dakota. Wells Fargo Bank, N.A. provides Wells Fargo & Company personal and commercial banking services and is Wells Fargo & Company's wholly-owned, principal operating subsidiary.

## JURISDICTION AND VENUE

13. This Court has original subject matter jurisdiction under 28 U.S.C. § 1332(d), because this case is brought as a class action, at least one class member is diverse from one Defendant, there are 100 or more Class members, and the aggregate amount in controversy exceeds $5 million.

14. This Court alternatively has jurisdiction pursuant to 28 U.S.C. § 1331 as one of the causes of action arises out of Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*.

15. This Court has supplemental jurisdiction to hear all state law statutory and common law claims pursuant to 28 U.S.C. § 1367.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2)–(3) because the Court has personal jurisdiction over Defendants, Defendant resides in this District, and a substantial part of the events or omissions giving rise to Plaintiff's and Class members' claims occurred in this District.

## INTRADISTRICT ASSIGNMENT

17. Pursuant to Civil L.R. 3-2(c), this case is properly assigned to the San Francisco or Oakland Division because a substantial part of the events or omissions that give rise to Plaintiff's and Class members' claims occurred in San Francisco County.

## COMMON FACTUAL ALLEGATIONS

18. Throughout late 2023 and early 2024, Wells Fargo sent notification letters to certain current and former customers informing them that Wells Fargo's records showed that they were "enrolled" in one or more Wells Fargo products for a certain period of time identified on the letter.

Blood Hurst & O' Reardon, LLP

The letter goes on to say that "if you feel that the enrollment was unauthorized or not wanted by you," call a certain number so that Wells Fargo can "care for any impact" caused by the unauthorized enrollment. Wells Fargo intentionally uses vague language to disincentivize consumers to respond.

19. Examples of the letters Wells Fargo has been sending to Plaintiff and class members for the variety of products it enrolled them in without customer consent or knowledge have been posted on various social media websites such as www.reddit.com. In addition to the variety of products involved, these postings reflect the extended time of Wells Fargo's illegal practices: *See* https://www.reddit.com/r/Scams/comments/1auxzk4/wells_fargo_letter_signdrive_mediation/ (last accessed March 10, 2024) (reflecting products associated with mortgages, bank accounts, car loans etc. and beginning as early at least as 2007).

20. Beyond Plaintiff's own experience, another example of the scope of Wells Fargo's conduct is reflected in a posting on X (formerly Twitter) by @VivekChirps on February 20, 2024, which shows that Wells Fargo enrolled Vivek in a product called Health Protector Bonus between March 2, 2010, and April 15, 2010.

21. In response to learning from Wells Fargo that he had been surreptitiously enrolled in, and paid for, the Health Protector Bonus product, Vivek tweeted "I had moved on from fake account scam, insurance scam and other scams from Wells Fargo. Thought all the issues were dealt with. And now I receive this letter from them notifying another scam!! How many more skeletons are hiding in $WFC closet?"

22. The continuing time frame in which Wells Fargo has engaged in these illicit business practices is reflected in another post to Reddit.com's r/scams subreddit website with an image of a largely identical notification letter dated November 15, 2023, stating that the recipient was enrolled in an Identity Theft Protection – Affinion product from May – July 2012. *See, e.g.*, https://www.reddit.com/r/Scams/comments/181f54u/letter_from_wells_fargo_regarding_identity_theft/. Another post reflected another customer enrollment through April 2014. *See, e.g.*, https://www.reddit.com/r/Scams/comments/18mhcr3/letter_from_wells_fargo_check_for_identity_theft/.

23. Wells Fargo apparently hopes to conceal the extent of the skeletons in its closet by quietly sending the letters Plaintiff and other class members have received and trying to pay them off with inadequate offers. No doubt Wells Fargo hopes that many of the letters will be thrown out and/or disregarded. Indeed, according to a number of social media posts, many Wells Fargo customers – class members here – think that the notification letters are a scam and do not trust them. *See, e.g.*, https://mike-hardy-thumbwind.medium.com/millions-are-getting-this-letter-from-wells-fargo-and-throwing-it-away-dont-it-cou-c012a376274c (last accessed March 10, 2024) (titled "Millions Are Getting This Letter From Wells Fargo And Throwing It Away – Don't"). Many others also apparently think the letter is a phishing scam or spam. *See, e.g.*, https://www.reddit.com/r/Scams/comments/181f54u/letter_from_wells_fargo_regarding_identity_theft/ (last accessed March 10, 2024).

24. Wells Fargo knew Plaintiff and class members never authorized the "enrollment" for the products that Wells Fargo has now essentially admitted were not consented to via the notification letters to its customers including Plaintiff and class members. This is further evidenced, at least in part, by the fact that Wells Fargo unilaterally discontinued the various products in which it enrolled Plaintiff and class members without also ever obtaining customer authorization, ***at that time of termination,*** to terminate those products.

25. Via the notification letters to Plaintiff and class members, Wells Fargo places the onus on Plaintiff and class members to contact Wells Fargo if they feel "that the enrollment in this product was not authorized or not wanted." As further insult, and evidence of their unfair business practices, Wells Fargo imposes an arbitrary 60-day deadline in which Plaintiff and Class members have to raise a dispute with its Customer Care department.

26. In a statement issued by Tom Goyda, Wells Fargo Senior Vice President, Media Relations Manager, to the Houston Chronicle referring to these notification letters, Mr. Goyda stated:

> While we cannot comment on regulatory matters, we continue to put legacy issues behind us as evidenced from this letter which covers a time period dating back more than one decade ago. . . . If customers have questions about these letters, they can call

the toll-free number provided in the letter itself or contact Wells Fargo by calling the number on their account statement or 800-869-3557.[3]

27. Wells Fargo unlawfully converted, transferred, and obtained fees, interest, penalties, and other benefits from its unauthorized enrollment of Plaintiff and Class members in the at-issue products and services, which caused injury to Plaintiff and Class members in an amount to be determined at trial.

28. Wells Fargo's supposed olive branch is insufficient. Wells Fargo relies on the inconspicuous and suspicious nature of the letter to depress claims rates, shifting the burden on the customer to take action to dispute an "enrollment" that Wells Fargo knows to have been illegitimate. Wells Fargo has nothing on its website concerning the letters, which makes the letters seem even more suspicious. Wells Fargo relies on other additional procedural and administrative burdens to avoid, reduce, and delay its ultimate liability and sweep under the rug its long-standing, intentional misconduct.

29. As Plaintiff's experience shows, Wells Fargo refuses to provide sufficient information concerning the damages claims that Plaintiff and Class members have in relation to Wells Fargo's unauthorized and unlawful conduct. Wells Fargo fails to provide information about any rights they have to obtain damages, what laws apply, what rights of action they may have, and what if anything they are giving up. Wells Fargo fails to provide any substantiation for the amount of money it wrongfully took from Plaintiff and Class members.

30. Wells Fargo waived, forfeited, and abandoned statutes of limitations that may be argued to apply to Plaintiff's and Class members' claims through its actions in writing the letters and attempting to "care for any impact this enrollment may have caused" to Plaintiff and Class members due to Wells Fargo's unlawful actions that give rise to this lawsuit.

31. Wells Fargo also engaged in fraudulent concealment of Plaintiff's and Class members' claims such that their causes of action never accrued under the discovery rule or are tolled under equitable doctrines so that their claims are timely. Wells Fargo surreptitiously used Plaintiff's

---

[3] https://www.houstonchronicle.com/business/article/what-to-know-about-wells-fargo-checks-18568099.php (last visited February 23, 2024).

and Class members' banking information, credit information, and personal information, to determine which "products" to enroll them in, and concealed its actions by failing to comply with laws that require disclosures and information regarding the products in which they were enrolled. Wells Fargo engaged in fraud, concealment, and deceit in every banking statement it provided Plaintiff and Class members that omitted the fact that they were enrolled in additional products that they never knew about, and were being charged fees, costs, interest, penalties, and other consideration for these products that they could not discover from reviewing their bank statements and financial records. By doing so, Wells Fargo actively concealed its misconduct so that Plaintiff and Class members could not reasonably discover it.

## CLASS ALLEGATIONS

32. Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), on behalf of Plaintiff and the Class defined as follows:

> All persons in the United States to whom Wells Fargo sent a letter informing them that a recent review of its records indicated that they were enrolled in a product and that they should contact Wells Fargo if they did not authorize or did not want the product.

33. Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), on behalf of Plaintiff and the Subclass defined as follows:

> All persons in California to whom Wells Fargo sent a letter informing them that a recent review of its records indicated that they were enrolled in a product and that they should contact Wells Fargo if they did not authorize or did not want the product.

34. The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their immediate families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

35. Plaintiff reserves the right under Federal Rule of Civil Procedure 23 to amend or modify the Class definition to include a broader scope, greater specificity, further division into subclasses, or limitations to particular issues. Plaintiff reserves the right under Federal Rule of Civil Procedure 23(c)(4) to seek certification of particular issues.

36. The requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) are met in this case.

37. The Fed. R. Civ. P. 23(a) elements of Numerosity, Commonality, Typicality, and Adequacy are all satisfied.

38. **Numerosity:** The exact number of Class members is not available to Plaintiff, but it is clear that individual joinder is impracticable. Millions of consumers use Wells Fargo for various financial services. Members of the Class can be identified through Defendants' records or by other means.

39. **Commonality:** Commonality requires that the Class members' claims depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke. Here, there is a common contention for all Class members as to whether Wells Fargo purchased or subscribed to products without authorization or lawful authority.

40. **Typicality:** Plaintiff's claims are typical of the claims of other Class members in that Plaintiff and the Class members sustained damages arising out of Defendants' uniform wrongful conduct.

41. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class members. Plaintiff's claims are made in a representative capacity on behalf of the Class members. Plaintiff has no interests antagonistic to the interests of the other Class members. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the Class. Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this action on behalf of the Class members.

42. **This case also satisfies Fed. R. Civ. P. 23(b)(2) - Policies Generally Applicable to the Class:** This class action is appropriate for certification because Defendants have acted or refused

to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge to those practices hinge on Defendants' conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff.

43. Declaratory and injunctive relief sought in this case includes, but is not limited to:

   a. Entering a declaratory judgment against Defendants regarding the aggregate liability to the Class, that Defendants' conduct was unlawful, and that Defendants filed to obtain lawful authorization to engage in the conduct at issue;

   b. Entering an injunction against Defendants requiring Defendants to cease their unlawful conduct complained of in this lawsuit, and to identify and pay Plaintiff and Class members money that will make them whole, or credit accounts in sufficient amounts for existing customers, and not rely on the insufficient, opaque, burdensome opt in process Defendants have employed to depress claims and keep their liability to a minimum.

44. **This case also satisfies Fed. R. Civ. P. 23(b)(3) - Predominance:** There are many questions of law and fact common to the claims of Plaintiff and Class members, and those questions predominate over any questions that may affect individual Class members. Common questions and/or issues for Class members include, but are not necessarily limited to the following:

   a. Whether Defendants' conduct was unauthorized;

   b. Whether Defendants' conduct was unlawful;

   c. Whether Defendants' records identify Class members, and the amount of money to make them whole;

   d. Whether injunctive and declaratory relief, and other equitable relief is warranted.

45. **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by individual Class members will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be

virtually impossible for the individual Class members to obtain effective relief from Defendants' misconduct. Even if Class members could mount such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be enhanced, and uniformity of decisions ensured.

## COUNT I

**Violation of the Fair Credit Reporting Act**
**15 U.S.C. § 1681,** *et seq.* **("FCRA")**
**On Behalf of the Class**

46. Plaintiff incorporates paragraphs 1–45 as if fully set forth herein.

47. Each time that Wells Fargo opens a new product or starts a new financial service, it obtains, reviews, and uses a consumer report (as that term is defined in 15 U.S.C. § 1681a(d)) on Plaintiff and Class members.

48. Plaintiff and Class members did not authorize Wells Fargo to obtain or use their consumer reports for such purposes. Wells Fargo obtained and used the consumer reports for impermissible purposes in violation of 15 U.S.C. § 1681b, and opened accounts or enrolled Plaintiff and Class members in products without authorization in violation of the law.

49. Wells Fargo obtained and used the consumer reports under false pretenses and without proper authorization from Plaintiff and Class members in violation of 15 U.S.C. § 1681n(a)(1)(B).

50. Wells Fargo knowingly and intentionally engaged in the unlawful conduct that violates the FCRA, and is liable under § 1681n and § 1681o for negligent and willful violations of the FCRA.

## COUNT II

**Violation of the California Unfair Competition Law**
**Cal. Bus. and Prof. Code § 17200,** *et seq.*
**On Behalf of the Class and Subclass**

51. Plaintiff repeats and realleges paragraphs 1–45 as if fully set forth herein.

52. California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services. California's Unfair Competition Law is interpreted broadly and provides a right of action for any unlawful, unfair, or fraudulent business act or practice that causes injury to consumers.

53. Wells Fargo engages in substantial sales and marketing activities in California.

54. The actions and omissions that give rise to this litigation were conceived, designed, facilitated, instigated, overseen, managed, and coordinated by Defendants' leadership in California, and uniform conduct emanated from California harming Plaintiff and Class members in the same way, such that California law applies to Plaintiff's and Class members' claims. California has a substantial interest that its laws be applied to Wells Fargo's conduct alleged herein that substantially outweighs any interests of other states.

55. Wells Fargo's acts and practices, as described herein, constitute unlawful, fraudulent, or unfair business practices, in that (1) Wells Fargo's practices violate numerous statutes as described herein; (2) the justification for Wells Fargo's practices is outweighed by the gravity of the consequences to Plaintiff and Class members; (3) Wells Fargo's conduct is immoral, unethical, oppressive, unconscionable, or substantially injurious to Plaintiff and Class members; and/or (4) the uniform conduct of Wells Fargo has a tendency to deceive Plaintiff and Class members.

56. Wells Fargo's unlawful, unfair, and fraudulent business acts and practices, as described above, include, but are not limited to, wrongfully and without authorization enrolling customers in products—using customers' money to pay for fees, costs, and other penalties related to the products—without their knowledge or authorization, and depriving them of any of the supposed benefits of the products that customers were unknowingly enrolled in without their authorization.

57. Wells Fargo's actions are unlawful because they constitute fraud, conversion, unjust enrichment, and violate the Fair Credit Reporting Act.

## COUNT III

**Unjust Enrichment**
**On Behalf of the Class and Subclass**

58. Plaintiff repeats and realleges paragraphs 1–45 as if fully set forth herein.

59. As a result of Wells Fargo's unlawful and deceptive actions described above, Wells Fargo was enriched at the expense of Plaintiff and Class and Subclass members through the payment of fees, penalties, interest, premiums, and other charges resulting from the products that Wells Fargo unlawfully and/or deceptively purchased in Plaintiff's, Class members', and Subclass members' names.

60. Under the circumstances, it would be against equity and good conscience to permit Wells Fargo to retain the ill-gotten benefits that it received from Plaintiff and Class and Subclass members. Wells Fargo engaged in unlawful, deceptive, and unfair practices to enroll customers into products without their knowledge or consent in order to obtain benefits from this misconduct. As a result, it would be unjust for Wells Fargo to retain the benefits without restitution to Plaintiff and Class and Subclass members for the money that Wells Fargo took from them, and disgorgement of the profits obtained by Wells Fargo that are lawfully the proceeds of Plaintiff and Class and Subclass members is appropriate.

## COUNT IV

**Conversion**
**On Behalf of the Class and Subclass**

61. Plaintiff repeats and realleges paragraphs 1–45 as if fully set forth herein.

62. Plaintiff and Class and Subclass members own and have the right to possess the money that is in their financial accounts with Wells Fargo.

63. Wells Fargo interfered with Plaintiff's, Class members', and Subclass members' possession of their money by wrongfully taking money directly from their accounts on the fraudulent basis that they were fees, costs, payments, or other charges related to these accounts.

64. Plaintiff and Class and Subclass members never authorized Wells Fargo to take money directly from their accounts to enroll them in products that they did not authorize.

65. Wells Fargo's wrongful taking from Plaintiff and Class members damaged them in an amount that is capable of identification through Wells Fargo's records.

## COUNT V

### Invasion of Privacy by Intrusion Upon Seclusion
### On Behalf of the Class and Subclass

66. Plaintiff repeats and realleges paragraphs 1-45, as if fully contained herein.

67. Based on the allegations above, Wells Fargo intentionally interfered with the solitude, seclusion or private concerns or affairs of the Plaintiff, Class, and Subclass members. Specifically Wells Fargo has no express authority to obtain the credit reports of the Plaintiff, Class, and Subclass members which Wells Fargo knew or should have known were unauthorized and would proximately cause harm to be suffered, including emotional distress when the Plaintiff learned of the unauthorized access of her credit report(s).

68. The actions of Wells Fargo into the affairs of the Plaintiff, Class and Subclass members occurred in such a way that would be highly offensive to a reasonable person. A reasonable person would not believe that a financial institution would impermissibly obtain a credit report without authorization.

69. The actions of Wells Fargo described above are a direct result into the personal affairs of the Plaintiff, Class and Subclass members and Wells Fargo is liable for actual damages in an amount to be determined and for an amount of punitive damages to be determined.

## PRAYER FOR RELIEF

Plaintiff, on behalf of herself and all others similarly situated, prays for a Court order:

A. Certifying the Class under Rule 23(b)(2) or 23(b)(3), appointing Plaintiff as the Class Representative, and Plaintiff's counsel as Class Counsel;

B. Finding Defendants' conduct was unlawful, as alleged herein, and entering judgment in favor of Plaintiff and the Class on the claims asserted herein;

C. Awarding declaratory relief against Defendants;

D. Awarding Plaintiff and Class members injunctive and other equitable relief, including restitution and disgorgement, as allowed by law or equity;

E.      Awarding Plaintiff and Class members nominal, statutory, actual, compensatory, consequential, incidental, enhanced, and punitive damages, as well as restitution and disgorgement as allowed by law or equity;

F.      Awarding pre- and post-judgment interest;

G.      Awarding reasonable attorneys' fees, expenses, and costs; and

H.      Granting such other relief as the Court deems just and appropriate.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: March 27, 2024

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
PAULA R. BROWN (254142)

By:      *s/ Timothy G. Blood*
TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
pbrown@bholaw.com

EVANGELISTA WORLEY LLC
JAMES M. EVANGELISTA
  (*pro hac vice forthcoming*)
10 Glenlake Parkway
South Tower Suite 130
Atlanta, GA  30328
Tel: 404/205/8400
404/205-8395 (fax)
jim@ewlawllc.com

STERLINGTON, PLLC
JENNIFER S. CZEISLER (*pro hac vice forthcoming*)
EDWARD W. CIOLKO (*pro hac vice forthcoming*)
One World Trade Center, 85th Floor
New York, NY  10007
Tel: 212/433-2993
jen.czeisler@sterlingtonlaw.com
edward.ciolko@sterlingtonlaw.com

*Attorneys for Plaintiff and the Putative Class*